## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                              Case No. 3:20-bk-30540-SHB

MARGARET ELIZABETH KINNEY               Chapter 7

          Debtor

MARGARET ELIZABETH KINNEY
and WILLIAM KINNEY

            Plaintiffs

            v.                                 Adv. Proc. No. 3:20-ap-3028-SHB

ANDERSON LUMBER COMPANY, INC.
BLUE TARP FINANCIAL, INC.; and
KIZER & BLACK, ATTORNEYS, PLLC

            Defendants

### MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS

**APPEARANCES**:   MARGARET ELIZABETH KINNEY
                   WILLIAM KINNEY
                    2442 Allegheny Loop Road
                    Maryville, Tennessee 37803
                    Pro Se Plaintiffs

                  MARY D. MILLER
                    The Miller Law Firm, PLLC
                    P.O. Box 52227
                    Knoxville, Tennessee 37950
                    Attorney for Defendants Anderson Lumber Company, Inc. and Kizer &
                         Black, Attorneys, PLLC

                  CLINTON EDWARD BRUSH
                    Butler Snow LLP
                    150 Third Avenue South, Suite 1600
                    Nashville, Tennessee 37201
                    Attorneys for Defendant Blue Tarp Financial, Inc.

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

# I. PROCEDURAL POSTURE

Plaintiffs,[1] acting *pro se*, initiated this adversary proceeding on June 16, 2020, by the filing of a Complaint (the "Initial Complaint") [Doc. 1] against Defendants Anderson Lumber Company, Inc. ("Anderson") and Blue Tarp Financial, Inc. ("Blue Tarp"). Plaintiffs expressly requested "an order to set aside the default judgment entered on August 5, 2019," (the "Judgment") by the Blount County, Tennessee Circuit Court, case number E-24747 (the "Initial State Court Action") "based upon fraud and Fraud Upon the Court, pursuant to the Federal Rules of Bankruptcy Procedure, Rule 9024." [Doc. 1 at ¶ 1.] Plaintiffs also stated that the Initial Complaint was brought "pursuant to 28 USC §1452[2] to remove [to federal court] Anderson's state court" case number E-29174, filed also in Blount County Circuit Court (the "Foreclosure Action"), and "for an order to void same for violation of the automatic stay and for other reasons." [*Id.*] Plaintiffs also asserted in the Initial Complaint a request for declaratory judgment and an injunction and other equitable relief. [*Id.*]

Twenty days[3] after Anderson filed a motion to dismiss[4] the Initial Complaint for lack of subject matter jurisdiction "for failing to obtain prior certification by the United States District

---

[1] Plaintiff Margaret Elizabeth Kinney ("Debtor") is the debtor in the associated bankruptcy case, and Plaintiff William Kinney is Debtor's husband. [Doc. 1 at ¶ 5.]

[2] The Court's quotation of Plaintiffs' filings is verbatim, *sic passim*.

[3] Federal Rule of Civil Procedure 15(a)(1)(B), made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7015, authorized Plaintiffs' filing of an amended complaint without leave of Court within twenty-one days after service of a motion under Rule 12(b), (e), or (f).

[4] Aside from filing the Amended Complaint, Plaintiffs did not respond to Anderson's motion to dismiss the Initial Complaint, which is a failure to comply with E.D. Tenn. LBR 7007-1(a), requiring "any objection to the relief sought in the motion [to] be filed within 21 days after the filing of the motion" and providing that "[a] failure to timely object to a motion will be construed to mean that the respondent does not oppose the relief requested by the motion." Because Plaintiffs appear *pro se*, the Court will treat their timely filed Amended Complaint as responsive to Anderson's initial motion to dismiss.

Court for the Eastern District of Tennessee,[5]" or in the alternative, "to abstain from hearing [Plaintiffs'] claims" [Doc. 3 at pp. 1-2], Plaintiffs filed an Amended Complaint. [Doc. 9.]  The Amended Complaint reflects a change in the caption of the case removing Anderson as a named defendant, leaving Blue Tarp as a defendant, and adding Kizer & Black, Attorneys, PLLC ("K&B")[6] as a defendant. [*Id.*]  Although Plaintiffs omitted Anderson from the case caption, they assert that the Amended Complaint "is also a formal objection to Anderson's claim[7] pursuant to Rule 3007(b) and 11 U.S.C. 502(a) on the ground that it did not contain any supporting documentation and is therefore unenforceable against the debtor." [Doc. 9 at ¶ 3.] Plaintiffs state that the Amended Complaint seeks "to determine the validity or extent of a lien, and to avoid the lien on the property [at issue] under § 522(f)." [*Id.* at ¶ 4.]  The Amended Complaint also seeks to determine the dischargeability of a debt and states that it is an action for abuse of process and for sanctions under 11 U.S.C. § 105(a). [*Id.* at ¶¶ 5-6.]  Although the Amended Complaint contains rambling allegations of chronologically disjointed events relating to the Initial State Court Action, it expressly identifies four counts: (1) "Fraud, Fraud Upon the Court"; (2) "False Claim, Abuse of Process"; (3) "Blue Tarp Fraud, Fraudulent Concealment, Fraud Upon the Court"; and (4) "Violation of the Automatic Stay." [Doc. 9.]

---

[5]  On January 18, 2019, Plaintiffs were barred by then Chief United States District Judge Thomas A. Varlan from "filing any new civil actions in the United States District Court for the Eastern District of Tennessee without first obtaining written certification from th[e] Court that the complaint has some legal and factual merit." Order, *Kinney v. Anderson Lumber Co., Inc.*, No. 3:18-cv-227-HAV-HGB (E.D. Tenn. Jan. 18, 2019), ECF No. 31 (the "Restraining Order"). (This district court case will be referred to as the "2018 District Court Lawsuit.")

[6] K&B represented Anderson in the Initial State Court Action.

[7] In fact, Anderson did not file a proof of claim in the Chapter 7 case; nor was there any deadline to do so until the Chapter 7 Trustee issued a notice of assets with the claims bar date of March 22, 2021. *See* Chapter 7 Case Doc. Nos. 2-1 at ¶ 10, 170; Fed. R. Bankr. P. 3002(c)(5). Instead, Debtor inappropriately filed a proof of claim on behalf of Anderson [Claim No. 1-1] (*see* Fed. R. Bankr. P. 3004), presumably so that she could object to it in the hope that this Court would disallow the claim so that Anderson would be precluded from asserting a claim in the case.  The Court allowed Anderson to withdraw the proof of claim. [Bankr. Doc. 158.]  (References herein to "Bankr. Doc." are to the Court's record in Debtor's underlying bankruptcy case, number 3:20-bk-30540-SHB.)

A.  <u>Anderson's Motion to Dismiss</u>

In response to the Amended Complaint, Anderson filed a Motion to Dismiss Complaint,
for Judgment on the Pleadings, or to Remand Case to Blount County Circuit Court or, in the
Alternative, Motion for Abstention on behalf of Anderson Lumber Co., Inc. ("Anderson's
Motion to Dismiss"). [Doc. 29.]  In it, Anderson notes that the removal of it from the caption of
the Amended Complaint creates ambiguity about Anderson's role as a defendant in this action.
[*Id.* at 2.]  Anderson, thus, filed the Motion to Dismiss "out of an abundance of caution." [*Id.*]
Anderson incorporates its arguments raised in its initial motion to dismiss filed in response to the
Initial Complaint [Doc. 5] and asserts additional arguments targeted at the Amended Complaint.

On September 15, 2020, Anderson supplemented its Motion to Dismiss to argue that
neither Debtor nor Mr. Kinney can bring any claim regarding the dischargeability of the debt
owed to Anderson. [Doc. 44.]  Finally, on September 25, 2020, Anderson again supplemented its
Motion to Dismiss to incorporate the claims, defenses, and arguments raised by K&B in its
motion to dismiss and related filings. [Doc. 74.]  Plaintiffs responded to Anderson's Motion to
Dismiss (as supplemented[8]) on September 23, 2020 [Docs. 69, 70.]

B.  <u>K&B's Motion to Dismiss</u>

On September 4, 2020, the Court granted K&B's motion to extend the time to respond to
the Amended Complaint, allowing until September 21, 2020, for K&B to file an answer or
pleading responsive to the Amended Complaint. [Doc. 36.]  On September 21, K&B filed its
Motion to Dismiss Complaint, or, in the Alternative, Motion for Abstention and Request for the
Court to Take Judicial Notice, on Behalf of Kizer & Black, Attorneys, PLLC ("K&B's Motion to

---

[8] Anderson's Motion to Dismiss and supplements will be referred to collectively as "Anderson's Motion to Dismiss."

Dismiss") [Doc. 49], with supporting brief and exhibits [Docs. 50, 68].[9]  Plaintiffs responded in

opposition to K&B's Motion to Dismiss on October 15, 2020. [Doc. 95.]

      C.  <u>Blue Tarp's Motion to Dismiss</u>

      Blue Tarp sought and obtained an extension to file responsive pleadings [Docs. 82, 83]

and filed Blue Tarp Financial, Inc.'s Motion to Dismiss the Amended Complaint ("Blue Tarp's

Motion to Dismiss") [Doc. 101] on October 29, 2020, with supporting brief and exhibit [Doc.

102].  With Plaintiffs' response in opposition to Blue Tarp's Motion to Dismiss, filed on

November 23, 2020 [Doc. 115], Defendants' motions, collectively, became ripe for adjudication.

## II.  LITIGATION HISTORY BETWEEN THE PARTIES

      Central to Plaintiffs' claims before this Court are their assertions of numerous

improprieties by Defendants and the Blount County Circuit Court in the Initial State Court

Action.  As alleged by Plaintiffs in the Amended Complaint, the Initial State Court Action was

filed by Anderson against Plaintiffs' youngest son, Christopher Kinney ("Christopher"), who

died in December 2015; Christopher's business, Kinney Custom Interiors; and Debtor. [Doc. 9 at

¶¶ 10, 11, 19.]  Plaintiffs assert that K&B failed to serve Debtor with process in the Initial State

Court Action and that she was precluded by K&B's false representation to the state court from

raising the issue at a hearing in 2013. [*Id.* at ¶ 19.]  Plaintiffs complain of irregularities and false

representations concerning summary judgment and discovery motions in 2013. [*Id.* at ¶¶ 20-21.]

Plaintiff William Kinney became a party to the Initial State Court Action in 2014 (although

Plaintiffs dispute that he was a proper party defendant in that action), and Plaintiffs assert that

Anderson and K&B failed to provide adequate notice to Mr. Kinney. [*Id.* at ¶ 23.]  Plaintiffs also

assert lack of notice for key hearings in 2017 and 2018, which Plaintiffs say resulted in dismissal

---

[9] The initial exhibits to K&B's Motion to Dismiss were stricken by the Court by Order entered September 23, 2020;
however, K&B had already cured the technical defect in the filing of the exhibits. [Doc. 71.]

of their counterclaims. [*Id.* at ¶¶ 25, 26.]  With that background, Plaintiffs assert that on July 22, 2019, the state court improperly denied Plaintiffs' motion to disqualify or recuse and, ignoring Tennessee procedural rules, proceeded to hold a "sham trial" the next day, on July 23, 2019, resulting with the Judgment, which also was entered contrary to required court procedures. [*Id.* at ¶¶ 24, 29.]

The following chronological table summarizes relevant and voluminous court filings[10] in state and federal cases[11] between Plaintiffs and Defendants (or any of them).

| Court & Case No. | Date of Filing | Summary | Record Location |
|---|---|---|---|
| Blount Co. Circuit E-24747 | 11/21/12 | Anderson's Complaint against Debtor and Chris Kinney d/b/a Kinney Custom Interiors, seeking to recover a debt of $34,765.98 | Docs. 68-5, pp. 31-32; 68-9[12] |
| Blount Co. Circuit E-24747 | 1/4/13 | Debtor's "Responsive Pleadings" to Anderson's Complaint | Doc. 68-12 |
| Blount Co. Circuit E-24747 | 5/6/2014 | Anderson's Amended Complaint against Plaintiffs[13] and Chris Kinney d/b/a Kinney Custom Interiors | Doc. 68-5, pp. 33-34; *see* Doc. 68-9, p. 6 |
| Blount Co. Circuit E-24747 | 12/11/14 | Order denying William Kinney's motion to dismiss | Doc. 68-7 |
| Tenn. Ct. App. E2015-01139-COA-WRM-CV | 6/16/15 | Plaintiffs' petition for writ of mandamus on appeal of Blount Co. Circuit case E-24747 | Doc. 68-5, pp. 44-45 |

[10] The recitation here of the relevant litigation between these parties is taken from certified copies of documents from state courts filed of record in this matter and of federal courts, of which the Court hereby takes judicial notice pursuant to Federal Rule of Evidence 201(c). *See* Memorandum and Order on Requests to Take Judicial Notice and Motions to Strike the Same [Doc. 118], at pp. 2-4 (explaining judicial notice). Citations to "Doc." indicate the record location in this adversary proceeding to a certified copy of the referenced documents from the state court proceedings. Citations to "ECF No." are to the federal court dockets as indicated.

[11] Although the Court has assigned terms of art to some of the lawsuits, for purposes of this chart, the Court uses the court names and case numbers for ease of reference to the court records of which the Court takes judicial notice.

[12] A certified copy of the full "Rule Docket" for the Initial State Court Action is located at Doc. 68-9.

[13] Use of the term "Plaintiffs" means both Plaintiffs in this adversary proceeding, regardless of their position as plaintiffs or defendants in the other cases.

| Court & Case No. | Date of Filing | Summary | Record Location |
|---|---|---|---|
| Tenn. Ct. App. E2015-01139-COA-WRM-CV | 6/22/15 | Order denying Plaintiffs' petition for writ of mandamus | Doc. 68-5, p. 46 |
| E.D. Tenn. 3:15-cv-324 | 7/28/15 | Plaintiffs attempted to remove the Initial State Court Action to federal court | ECF No. 1 |
| Tenn. Sup. Ct. E2015-01139-SC-R11-CV | 7/25/15 | Plaintiffs' petition for writ of certiorari on Tenn. Ct. App. Order | Doc. 68-5, pp. 47-48 |
| Tenn. Sup. Ct. E2015-01139-SC-R11-CV | 9/16/15 | Tenn. Sup. Ct.'s order denying Plaintiffs' permission to appeal | Doc. 68-5, p. 49 |
| E.D. Tenn. 3:15-cv-324 | 2/2/16 | Federal district court remanded the Initial State Court Action because the claims were solely based in state law and diversity jurisdiction was lacking | ECF Nos. 7-8 |
| E.D. Tenn. 3:16-cv-78 | 2/16/16 | Plaintiffs filed federal complaint against Anderson; Blue Tarp; K&B; McDonald, Levy & Taylor ("MLT"); and Jason Rose | ECF No. 1 |
| Blount Co. Circuit E-24747 | 4/8/16 | Order granting Anderson's request to dismiss Chris Kinney | Doc. 68-5, p. 57 |
| E.D. Tenn. 3:15-cv-324 | 4/15/16 | Federal district court denied Plaintiffs' motion for reconsideration | ECF No. 13 |
| Blount Co. Circuit E-24747 | 5/23/16 | Plaintiffs moved for disqualification or recusal of state trial judge | Doc. 68-5, p. 61 |
| E.D. Tenn. 3:15-cv-324 | 5/24/16 | Federal district court denied as moot Plaintiffs' motion to substitute party in the remanded case | ECF No. 15 |
| Blount Co. Circuit E-24747 | 6/2/16 | Plaintiffs, separately, filed motions to amend answer and counter claim | Doc. 68-15, pp. 17-18 |
| Blount Co. Circuit E-24747 | 6/10/16 | Hearing was held on Plaintiffs' various motions | Doc. 68-5, p. 61 |
| E.D. Tenn. 3:16-cv-78 | 3/28/17 | District court's granting in part and denying in part motions to dismiss by Anderson, K&B, and MLT; granting the motions to dismiss of Blue Tarp and Jason Rose (who was the special master in the Initial State Court Action); and denying Plaintiffs' motion to amend complaint | ECF No. 28 |

| Court & Case No. | Date of Filing | Summary | Record Location |
|---|---|---|---|
| E.D. Tenn. 3:17-cv-288 | 7/7/17 | Plaintiffs' second attempt to remove the Initial State Court Action to federal court | |
| Blount Co. Circuit E-24747 | 7/17/17 | Order granting Anderson's motion to dismiss Debtor's counterclaims following a hearing at which Debtor failed to appear after notice | Docs. 68-14, 90-3 |
| E.D. Tenn. 3:16-cv-78 | 11/7/17 | United States Magistrate Judge Guyton's ruling on discovery motions following an October 18, 2017 hearing, which ordered Anderson to produce the "Anderson Lumber Credit Application . . . ." | ECF No. 54 |
| E.D. Tenn. 3:16-cv-78 | 12/19/17 | Magistrate Judge Guyton's denial of Plaintiffs' discovery motions, including an express "find[ing] that [Anderson] has produced the Credit Application that it intends to rely on in defending the case" and finding that Plaintiffs' assertion that Plaintiffs' argument about the application went to the merits and was not proper for a motion to compel | ECF No. 63 |
| E.D. Tenn. 3:16-cv-78 | 1/5/18 | Plaintiffs' motion to reconsider Magistrate Judge Guyton's December 19, 2017 order | ECF No. 65 |
| E.D. Tenn. 3:16-cv-78 | 1/9/18 | Federal district court denied Plaintiffs' second motion to amend their complaint and dismissed Plaintiffs' case that attempted to state claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* | ECF Nos. 66-67 |
| E.D. Tenn. 3:17-cv-288 | 1/9/18 | Federal district court remanded for a second time the Initial State Court Action because the removal was untimely | ECF No. 12 |
| Sixth Circuit 18-5150 | 3/28/18 | Federal court of appeals dismissed Plaintiffs' appeal of January 9, 2018 remand | ECF No. 15 3:18-cv-288 |
| E.D. Tenn. 3:18-cv-227 | 6/8/18 | Plaintiffs filed their Complaint under 42 U.S.C. § 1983, *inter alia*, against Anderson, K&B, and MLT | Doc. 68-15 |
| Sixth Circuit 18-5146 | 9/13/18 | Federal court of appeals affirmed the district court's dismissal of No. 3:16-cv-78 | ECF No. 72 3:16-cv-78 |
| U.S. Supreme Court 18-5150 | 9/17/18 | Plaintiffs' Petition for a Writ of Certiorari on the federal district court's second remand of the Initial State Court Action | ECF No. 16 3:18-cv-288 |

| Court & Case No. | Date of Filing | Summary | Record Location |
|---|---|---|---|
| E.D. Tenn. 3:15-cv-324 | 10/9/18 | Plaintiffs filed a Rule 60 motion, asking the federal district court to vacate the judgment for nonsuit of Christopher Kinney entered on April 8, 2016, in the Initial State Court Action, asserting that the order was entered while the federal court had jurisdiction | ECF No. 16 |
| E.D. Tenn. 3:18-cv-227 | 10/31/18 | Federal district court ordered Plaintiffs to show cause why the case, which purported to state a claim under 42 U.S.C. § 1983 and sought to enjoin the Initial State Court Action, should not be dismissed for failure to state a claim | ECF No. 26 |
| U.S. Supreme Court 18-5150 | 1/8/19 | Supreme Court denied Plaintiffs' petition for certiorari | ECF No. 17 3:17-cv-288 |
| E.D. Tenn. 3:18-CV-227 | 1/18/19 | Restraining Order dismissing Plaintiffs' action with prejudice and precluding, restraining, and enjoining Plaintiffs from filing any new cases in the district court without first obtaining written certification that such complaint has some legal/factual merit (including that such claim "is unrelated to the conspiracies they have alleged in prior filings") | Doc. 68-2; ECF Nos. 30-31 |
| Blount Co. Circuit E-24747 | 2/19/19 | Order denying Plaintiffs' motion to continue the trial set for July 23, 2019, and setting a pretrial schedule | Doc. 68-3 |
| E.D. Tenn. 3:18-CV-227 | 2/19/19 | Plaintiffs' Motion to Reconsider, arguing, *inter alia*, lack of due process and "fraud upon the court" by Anderson | Doc. 68-10; ECF No. 32 |
| U.S. Supreme Court 18-1026 | 4/16/19 | Supreme Court denied Plaintiffs' petition for certiorari | ECF No. 75 3:16-cv-78 |
| E.D. Tenn. 3:15-cv-324 | 5/4/19 | Federal district court denied Plaintiffs' Rule 60 motion | ECF No. 17 |
| Blount Co. Chancery 2019-053 | 7/9/19 | Plaintiffs' Verified Complaint for Injunctive and Declaratory Relief against Anderson, asking the court to invalidate Anderson's claim, enjoin Anderson's circuit court suit, award damages for alleged "fraud upon the court," and refer Anderson to the district attorney for criminal prosecution | Doc. 68-5, pp. 1-30 |

| Court & Case No. | Date of Filing | Summary | Record Location |
|---|---|---|---|
| Blount Co. Circuit E-24747 | 7/22/19 | Plaintiffs' Proposed Motion to Continue, indicating that they intended to petition for interlocutory appeal if their Third Motion for Recusal was denied and that they would then seek to continue the trial until the court of appeals decided the petition | Doc. 68-4; 91-1 |
| Blount Co. Circuit E-24747 | 7/22/19 | Order denying Plaintiffs' third motion for disqualification and motion to continue the trial, including findings of fact and conclusions of law | Doc. 68-13 |
| E.D. Tenn. 3:18-CV-227 | 8/1/19 | Order finding that Plaintiffs' arguments were frivolous and denying the motion to set aside the judgment that dismissed "this frivolous case" under the *Rooker-Feldman* doctrine and reminding Plaintiffs of the Restraining Order | Doc. 68-11; ECF No. 33 |
| Blount Co. Circuit E-24747 | 8/5/19 | Pre-trial Order from July 23, 2019 hearing, finding that Plaintiffs were timely served with notice and failed to appear, denying Plaintiffs' various motions, granting Anderson's motion in limine and request for judicial notice, and otherwise denying any other pending motions | Doc. 68-8 |
| Blount Co. Circuit E-24747 | 8/5/19 | Judgment entered against Plaintiffs in the total amount of $183,215.59 | Doc. 68-16 |
| Blount Co. Chancery 2019-053 | 10/16/19 | Hearing was held on Anderson's motion to dismiss Plaintiffs' complaint and on Plaintiffs' motion for disqualification of the chancellor | Doc. 68-6, p. 1 |
| Blount Co. Chancery 2019-053 | 12/4/19 | Order denying Plaintiffs' motion for disqualification of the chancellor and granting Anderson's motion to dismiss | Doc. 68-6 |

Anderson recorded its Judgment with the Blount County Register of Deeds on September 5, 2019. [*See* Bankr. Doc. 60.[14]] Anderson also sought to garnish Debtor's wages shortly before she filed her Chapter 7 petition on February 24, 2020. [Doc. 1 at ¶ 3; Bankr. Doc. 1.] At some

---

[14] Although it does not appear to be disputed, the Court record does not appear to contain a certified copy of the recorded Judgment or of Anderson's Complaint for Foreclosure on Judgment Lien. [*See* Bankr. Docs. 60 at ¶ 4; 68.] This information concerning the judgment lien and execution efforts is included here for background only and is not material to the Court's decision in this adversary proceeding.

point prepetition, Anderson also filed the Foreclosure Action to foreclose the Judgment lien. [*See*

Bankr. Docs. 60 at ¶ 4; 63; 68.]  Postpetition, Anderson, through K&B, filed a First Amended

Verified Complaint for Foreclosure on Judgment Lien, Setting Aside Fraudulent Conveyance

and Other Relief, along with an Abstract of Suit and Notice of Lien Lis Pendens and served the

same on Debtor [Bankr. Doc. 63 at pp. 4-13.[15]]

### III.  THE PARTIES' POSITIONS

A.  Anderson's Motion to Dismiss

In an apparent attempt to cover all possible bases, Anderson raises numerous arguments

in support of its request for dismissal of the Amended Complaint.[16]  First, Anderson argues that

Plaintiffs' objection to Anderson's proof of claim should be dismissed because Anderson did not

file a proof of claim; instead, Debtor improperly filed a proof of claim in Anderson's name.

[Doc. 30 at pp. 7-8.]  Second, Anderson argues that Plaintiffs' request to avoid Anderson's lien

under 11 U.S.C. § 522(f) should be dismissed because Plaintiffs have no interest in the Property

to which Anderson's lien attached, because Debtor's amended Schedule C [Bankr. Doc. 47] does

not claim any exemption in the Property, and because Debtor's amended Schedule A/B [Bankr.

Doc. 30] reflects no ownership in the Property. [Doc. 30 at pp. 8-9.]  Third, Anderson asserts that

Plaintiffs may not stand in the shoes of the Chapter 7 Trustee for authority to review, investigate,

or challenge proofs of claims. [*Id.* at pp. 9-10.]  Fourth, according to Anderson, Debtor lacks

---

[15] This document, filed by Debtor in the bankruptcy case, was stricken by the Court [Bankr. Doc. 89].

[16] Anderson's initial motion to dismiss was filed before Plaintiffs filed the Amended Complaint.  In addition to seeking dismissal for some of the reasons stated in Anderson's Motion to Dismiss, Anderson also argued that this Court should either remand or abstain from hearing the "removed case" (i.e., the Initial State Court Action). [Doc. 5 at pp. 7-16.] The Court struck Debtor's Notice of Removal [Bankr. Doc. 63] and Amended Removal Notice [Bankr. Doc. 86] by Order entered on June 18, 2020. [Bankr. Doc. 89.]  The Court also denied as moot Anderson's motion for remand. [Bankr. Doc. 152.]  Thus, the Court need not address Anderson's [Doc. 5 at pp. 7-16] or K&B's [Doc. 50 at pp. 34-35] requests for this Court to abstain from hearing the "removed case."

standing to bring any claim for fraud or any other legal claim that purportedly arose before she

filed her bankruptcy petition because any such claim would belong to the bankruptcy estate so

that the Chapter 7 Trustee is the only party with standing to litigate any such claim. [*Id.* at p. 10.]

Additionally, Anderson argues that even if Debtor had standing to bring such a claim, this Court

lacks jurisdiction to hear any such claim of William Kinney because he is not a debtor in

bankruptcy and such a claim is neither core under 28 U.S.C. § 157(b) nor does it arise in or is it

related to a case under Title 11. [*Id.* at pp. 10, 19.]

Anderson's fifth argument is that Plaintiffs' claim of fraud relating to representations

made to United States Magistrate Judge H. Bruce Guyton in *Kinney v. Anderson Lumber Co.,*

*Inc.*, No 3:16-cv-78 (E.D. Tenn.) (the "2016 District Court Lawsuit") is barred under the

doctrines of collateral estoppel and res judicata and that the Chapter 7 Trustee would be the only

proper party to prosecute such a prepetition claim. [*Id.* at p. 11.]  As to any claim by Plaintiffs

concerning the "Blue Tarp Commercial Credit Application" and alleged "fabricated evidence

[of] a 'Reassignment of Delinquent Account,'" Anderson argues that no claim concerning either

matter has been stated against it and that any possible claims would belong solely to the

bankruptcy estate. [*Id.* at pp. 11-12, 18-19.]  Anderson also addresses numerous allegations by

Plaintiffs concerning the Initial State Court Action ("The Alleged Failure to Serve [Debtor] with

Process," "The Sham Trial," "The June 12, 2017 Hearing," "The September 14, 2018 Hearing,"

"Failure to Properly Serve Judgment," "The Failure of Blue Tarp To Attend The Trial," and

"Reassignment Of Account") and argues, *inter alia*, that Plaintiffs fail to allege sufficient

elements to state any cause of action relating to such matters, that they waived any such claims

by not raising them in the Initial State Court Action, and that any potential claims arising out of

the Initial State Court Action belong solely to the bankruptcy estate. [*Id.* at pp. 12-19.]

Similarly, Anderson notes that Plaintiffs' assertion that Mr. Kinney was not notified of a hearing

in the Initial State Court Action is not actionable, and even if it were actionable, it would belong

solely to Mr. Kinney, who is not a debtor before this Court so that such a claim would be neither

a core proceeding nor arise from or be related to the underlying bankruptcy case. [*Id.* at pp. 12-

13.]  Finally as to the claims relating to the Initial State Court Action, Anderson asserts that

Plaintiffs' claims must be dismissed because they were filed in violation of the Restraining

Order. [*Id.* at pp. 19-20.]  Concerning Debtor's claim that Anderson violated the automatic stay,

Anderson argues that the Court should dismiss that claim because Debtor failed to allege any

actual damages. [*Id.* at p. 20.]

Anderson's first supplemental motion to dismiss argues that Plaintiffs' apparent assertion

of a claim under Federal Rule of Bankruptcy Procedure 7001(6) to determine the

dischargeability of a debt should be dismissed because (1) Mr. Kinney has no ground to assert

any such claim because he is not a debtor in bankruptcy and (2) no claim as to dischargeability

against Debtor has been raised and the deadline for such has passed. [Doc. 44 at p. 2.]

Anderson's second supplemental motion to dismiss was filed to incorporate the arguments raised

in K&B's Motion to Dismiss. [Doc. 74.]

B.  K&B's Motion to Dismiss

K&B, like Anderson, argues that Plaintiffs lack standing to bring any prepetition claim

against K&B because (1) any claims that belonged to Debtor are now property of the bankruptcy

estate so that only the Chapter 7 Trustee has standing to prosecute them and (2) the Court lacks

jurisdiction over any purported claim that might belong to Mr. Kinney because he is not a debtor

in bankruptcy and none of the allegations create core claims under 28 U.S.C. § 157(b) and are

not otherwise claims that arise in or relate to a case under Title 11. [Doc 50 at pp. 10-11.]  K&B

also asserts that Plaintiffs were barred from filing their claims absent compliance with the

Restraining Order. [*Id.* at p. 11.]  Like Anderson, K&B also argues that Plaintiffs waived certain

claims by failing to raise them in the Initial State Court Action. [*Id.* at pp. 12-13.]  According to

K&B, Plaintiffs' claims in Blount County Chancery Court, *Kinney v. Anderson Lumber Co., Inc.*,

Case No. 2019-053 (the "Chancery Court Case"), are res judicata to numerous of Plaintiffs'

claims here, including the claims of fraud relating to K&B's representations to Magistrate Judge

Guyton and to the numerous alleged notice and hearing improprieties in the Initial State Court

Action. [*Id.* at pp. 13-16.]  Alternatively, K&B argues that Plaintiffs have failed to plead

sufficiently the elements of fraud under Tennessee law and under federal pleading requirements.

[*Id.* at pp. 16-17.]  Finally, K&B repeats Anderson's argument that Debtor's claim for violation

of the automatic stay should be dismissed because she failed to plead any actual damages. [*Id.* at

p. 50.]

      C.  <u>Blue Tarp's Motion to Dismiss</u>

Blue Tarp interpreted Plaintiffs' Amended Complaint to allege that Blue Tarp is liable to

them under "theories of common law fraud / fraudulent concealment and fraud upon the court."

[Doc. 102 at p. 1.]  Blue Tarp argues that dismissal is required because any such claims are

barred by the doctrines of res judicata and collateral estoppel and by the Restraining Order and

that, in any event, Plaintiffs have stated no cognizable or actionable claim against Blue Tarp. [*Id.*

at p. 2.]

D. <u>Plaintiffs' Responses to the Motions to Dismiss</u>

Plaintiffs first note, correctly, that Anderson's alternative Rule 12(c) motion is procedurally incorrect because Anderson did not answer the Amended Complaint.[17] [Doc. 70 at ¶ 1.]  They say that they "decided to respond in part to certain statements made by Anderson until a proper Rule 12(c) motion is filed" (i.e., presumably after Anderson answers the Amended Complaint).[18] [*Id.* at ¶ 8.]  Plaintiffs also correctly note that Anderson's request for a remand is moot and that the Court has jurisdiction over Anderson's violation of the automatic stay. [*Id.* at ¶¶ 2-3.]  Concerning Anderson's request for abstention, Plaintiffs state that the "primary issue stated in plaintiff's adversary complaint is that Anderson has submitted a proof of claim without supporting documentation, and that claim is fraudulent." [*Id.* at ¶ 4.]  This focus of Plaintiffs' complaint, they say, is not violative of the Restraining Order because the Amended Complaint is directed at Anderson's proof of claim in the bankruptcy court and "questions only the fraud element present in the procurement of the Anderson's [J]udgment, which directly relates to the claims allowance process." [*Id.* at p. 3, n.2.]

Plaintiffs disagree with Anderson's argument that this Court lacks core jurisdiction over their claims because, they say, their "disallowance claims" against Anderson directly relate to administration of the bankruptcy estate under the statutory provisions for allowance or disallowance of claims, orders to turn over property of the estate, and determinations of the validity, extent, or priority of liens. [*Id.* at ¶¶ 6-7.]

---

[17] Anderson filed an Answer to the Initial Complaint on July 16, 2020 [Doc. 6], contemporaneously with its initial motion to dismiss, but it did not file an answer to the Amended Complaint, choosing instead, as was its right, to move for dismissal.  Neither K&B nor Blue Tarp filed an answer.

[18] As noted below, Anderson's Motion to Dismiss was filed alternatively under Rule 12(b) or 12(c), and it is proper for the Court to decide all of the motions under Rule 12(b).

Plaintiffs address issues underlying the Judgment in the Initial State Court Action, including *inter alia* an argument that Mr. Kinney was an intervenor, not a defendant, so that the Judgment is not final as to him [*id.* at ¶ 9] and that their allegations of fraud relate not only to proceedings in the Initial State Court Action but also to proceedings before the district court and this Court and that such fraud precludes estoppel and supports a finding by this Court that the Judgment was void "*ab initio*" [*id.* at ¶ 12]. Plaintiffs also argue that the Judgment was void *ab initio* because the state court failed to comply with Tennessee Rule of Civil Procedure 58. [*Id.* at ¶¶ 12-13.] Finally, Plaintiffs argue that they have standing and have suffered an injury in fact. [*Id.* at ¶ 17.]

Plaintiffs also responded in opposition to Anderson's supplemental motion to dismiss, asserting that it appears to be a motion to strike Plaintiffs' dischargeability claim pursuant to Federal Rule of Civil Procedure 12(f). [Doc. 69 at ¶ 1.] As to Mr. Kinney's position regarding dischargeability of Debtor's debt to Anderson, Plaintiffs argue that Mr. Kinney "has a stake in the court's decision regarding dischargeability" so that he has standing as a party in interest. [*Id.* at ¶ 2.] Plaintiffs explain that their intention in invoking Federal Rule of Bankruptcy Procedure 7001(6) was to assert a claim as allowed by Federal Rule of Bankruptcy Procedure 4007(a). [*Id.*] Plaintiffs interpret the rules to allow them to ask the Court to determine the dischargeability of Anderson's debt, especially since the deadline to object to Debtor's discharge under 11 U.S.C. § 727 was extended to August 15, 2020, for both the Chapter 7 Trustee and Anderson [Bankr. Doc. 136]. [*Id.* at ¶¶ 3-4.]

Plaintiffs' response to K&B's Motion to Dismiss notes that it is directed at the motions by both K&B and Anderson because K&B adopted and incorporated the arguments raised by Anderson. [Doc. 95 at ¶¶ 1, 13.] After reciting numerous extra-record facts underlying the Initial

State Court Action [*id.* at ¶¶ 2-5] to refute K&B's assertion that Plaintiffs' claims appear targeted to Anderson rather than K&B, Plaintiffs note that their Amended Complaint alleges a scheme between Anderson and K&B. [*Id.* at ¶ 6.]

Plaintiffs acknowledge the Court's authorization of Anderson's withdrawal of the proof of claim filed by Debtor [*see id.* at ¶ 7] but assert that "the remaining part [of their Amended Complaint] specifically states a claim concerning several issues that have overlapping elements of intrinsic and extrinsic fraud committed by K&B in order to procure Anderson's state court [J]udgment." [*Id.*]  Plaintiffs argue that "[f]raud vitiates everything" so that they are asking this Court to invalidate the lien on Anderson's Judgment and discharge the corresponding debt, as well as to use the Court's "inherent power to investigate whether Anderson's judgment lien was obtained by fraud." [*Id.* at ¶ 8.]  Plaintiffs also "unequivocally assert; the Blount Court did not have jurisdiction over the Plaintiffs," and they state that they are not seeking appellate review of a state court's decisions but challenging the Judgment as "fraudulently obtained by intrinsic and extrinsic fraud." [*Id.* at ¶¶ 8-9.]

Plaintiffs challenge K&B's argument that the Amended Complaint does not comply with federal pleading requirements by arguing that the Tennessee Supreme Court rejected the federal "plausibility" standard. [*Id.* at ¶ 15.]  Concerning the alleged fraud on the federal court by K&B's representation to Magistrate Judge Guyton in the 2016 District Court Lawsuit, Plaintiffs explain that there is a difference between the "Anderson Lumber Credit Application" ordered to be produced and Anderson's representation that it had produced the "Credit Application which is the subject of the [Initial State Court Action]." [*Id.* at ¶ 17.]  Plaintiffs acknowledge that the Sixth Circuit Court of Appeals refused to address the issue so that "the Sixth Circuit prejudiced [them] by denying [them] due process of law under the Fifth Amendment, . . . violat[ing] [their]

statutory rights in failing to exercise [the court's] supervisory power to act pursuant to Title 28 U.S.C. § 636(b)&(c)." [*Id.* at ¶ 18.]  Thus, Plaintiffs argue, the Sixth Circuit's decision "left questions of law and fact neither litigated nor determined." [*Id.* at ¶ 19.]  Plaintiffs point out that they raised the issue of Anderson and K&B's "judicial admissions" at the October 18, 2017 hearing before Magistrate Judge Guyton in the 2016 District Court Lawsuit and that the dismissal of the 2018 District Court Lawsuit, "which [they] have not yet appealed for private reasons," as well as the dismissal of the 2016 District Court Lawsuit "are void for violation of [their] Fifth Amendment rights," as is the Restraining Order. [*Id.*]

Concerning the question of whether Debtor's prepetition claims are property of the bankruptcy estate, Plaintiffs respond that they "will address this issue in a Motion to Join the Trustee as a Plaintiff, or in the alternative, grant derivative standing, or compel abandonment."[19] [*Id.* at ¶ 21]  They also assert that Mr. Kinney has standing because of an equitable interest he possesses in the Property. [*Id.*]

Regarding K&B's argument that claims for fraud are outside of this Court's jurisdiction under Title 11, Plaintiffs assert that their claims of intrinsic and extrinsic fraud are directly related to the Judgment and lien asserted by Anderson. [*Id.* at ¶ 22.] Plaintiffs' response then reiterates pages of mostly extra-record allegations concerning procedure and evidence in the Initial State Court Action [*id.* at ¶¶ 23-36] while also restating their allegations concerning K&B's representations to Magistrate Judge Guyton in the 2016 District Court Lawsuit [*id.* at ¶ 31].[20]  Finally, Plaintiffs argue that they adequately allege damages. [*Id.* at ¶ 37.]

---

[19] On December 15, 2020, Plaintiffs filed a Motion to Compel Abandonment and Grant Derivitive Standing in this adversary proceeding. [Doc. 125.]  The Court struck the motion because it was inappropriately filed in the adversary proceeding and ordered that the Debtor may file a motion to compel abandonment and/or seeking derivative standing in the bankruptcy case. [Doc. 126.]

[20] Telling is Plaintiffs' assertion in support of their argument against application of the doctrine of collateral estoppel: "In every court in which we have previously raised the issue of said judicial admissions [concerning the credit

In response to Blue Tarp's Motion to Dismiss, Plaintiffs argue that the Court should reject Blue Tarp's arguments because it "is in default and lacks standing to present the" motion. [Doc. 115 at ¶ 1.]  To the extent that the Court disagrees, however, Plaintiffs argue that Blue Tarp has been in collusion with Anderson and K&B to defraud Plaintiffs. [*Id.*]  Plaintiffs then raise allegations concerning the underlying Initial State Court Action in opposition to Blue Tarp's Motion to Dismiss, focusing on "(a) the fabrication of the Blue Tarp commercial credit application, and (b) the fabrication of the Reassignment document." [*Id.* at ¶¶ 2-11.]  Plaintiffs assert that Blue Tarp's attorney was present at the October 18, 2017 hearing before Magistrate Judge Guyton and that he "made no objection to the Fraud Upon the Court presented by Anderson and K&B" so that Blue Tarp is also liable for "Fraud Upon the Court." [*Id.* at ¶ 14.] Finally, Plaintiffs argue that the Restraining Order does not preclude their claims before this Court because of the alleged fraudulent presentations by Defendants to the district court that issued the Restraining Order and because their Amended Complaint "does not require this court to re-examine the merits of any other case." [*Id.* at ¶¶ 17-18.]

## IV. ANALYSIS

A.  <u>Standard for Rule 12 Dismissal</u>

Regardless whether a party seeks dismissal under Federal Rule of Civil Procedure 12(b) or (c), the same standard applies, and the motion must be granted if, after taking as true "all well-pleaded material allegations of the pleadings of the opposing party . . . , 'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"[21] *Jackson v.*

---

application], they were either ignored or dismissed, which means they were not addressed or 'actually litigated.'" [*Id.* at ¶ 31.]

[21] Plaintiffs misunderstand Anderson's Motion to Dismiss as having been asserted only under Rule 12(c) when the motion clearly indicates that was filed to "dismiss the Plaintiffs' Complaint and Amended Complaint, for Judgment on the Pleadings, or in the Alternative to Remand Case to Blount County Circuit Court, or in the alternative, to abstain from hearing this case." [Doc. 29 at p. 2.]  Even if Anderson had relied solely on Rule 12(c), the Court could (and

*Pro. Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *Paskvan v. City of Cleveland*

*Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).  Notwithstanding Plaintiffs' argument

that Tennessee courts do not apply the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), this Court is constrained to follow federal law, and *Iqbal* applies.  Thus, the Court will

evaluate Plaintiffs' Amended Complaint to determine whether it contains "sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

678.  Critically, "[a]lthough the pleadings of pro se litigants should be liberally construed and

held to less stringent standards than formal pleadings drafted by attorneys, even pro se plaintiffs

are required to adhere to basic pleading requirements." *Bruce v. Great Britain*, No. 18-6149,

2020 WL 2065955, at *2 (6th Cir. Mar. 19, 2020) (citations omitted).

Here, Defendants have submitted numerous exhibits from other legal proceedings

between the parties of which the Court takes judicial notice.  The impact of such on a Rule 12

motion was succinctly explained in *Hardwick v. Jahn (In re Liquidation, Inc.)*, No. 1:13-bk-

16079-SDR, Adv. Proc. No. 1:18-ap-1005-SDR, 2018 WL 2997053, at *5 (Bankr. E.D. Tenn.

June 12, 2018):

> When considering a motion for judgment on the pleadings, the court
> generally may not consider any facts outside the pleadings and any attached
> exhibits. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). When
> matters outside the pleadings are considered, the court should treat the motion as
> one for summary judgment. *See Filer v. Polston*, 886 F. Supp. 2d 790, 794 (S.D.
> Ohio 2012) (citing *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991)).
> The Sixth Circuit has held in the context of a Rule 12(b)(6) motion that a court may
> consider the complaint, exhibits attached to it, public records, items appearing in
> the record of the case, and exhibits that were attached to a defendant's motion to
> dismiss, as long as such are referred to in the complaint and are central to the claims
> contained therein. *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015);
> *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007);

would) exercise its discretion to "address substance over form" and decide the motion under Rule 12(b). *See Pugh v. AIG Prop. Cas. Co.*, No. 7:17-145-KKC, 2019 WL 97028, at *3 (E.D. Ky. Jan. 3, 2019).

*Amini*, 259 F.3d at 502. The court may take judicial notice of entries from its docket or another court's, although it may not credit disputable facts therein as evidence. *See In re Omnicare Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014). Doing so does not require the court to convert the pending motion into a motion for summary judgment. *See Irons v. Maginnis (In re Irons)*, 572 B.R. 877, 881 n.1 (N.D. Ohio 2017).

The Court will treat the motions to dismiss (collectively) as Rule 12(b)(6) motions and will consider those court filings identified above as appropriate for judicial notice without converting the motions under Rule 12(d).[22]

The operative document before the Court is Plaintiffs' Amended Complaint, which expressly attempts to state four "counts":  (1) "Fraud, Fraud Upon the Court" [Doc. 9, ¶¶ 15-26]; (2) "False Claim, Abuse of Process" [*id.*, ¶¶ 27-29]; (3) "Blue Tarp Fraud, Fraudulent Concealment, Fraud Upon the Court" [*id.*, ¶ 30]; and (4) "Violation of the Automatic Stay" [*id.*, ¶¶ 31-41].  Rather than track Defendants' various arguments for dismissal of Plaintiffs' Amended Complaint, the Court will use the Amended Complaint itself to address the validity of Plaintiffs' claims and will interpret the allegations liberally, without limiting the claims to those enumerated in the "counts."

B.  <u>Subject Matter Jurisdiction</u>

The threshold issue for any federal court's review of claims is subject matter jurisdiction.[23] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("The

---

[22] Accordingly, the Court denies Plaintiffs' request in their response to Blue Tarp's Motion to Dismiss [Doc. 115 at ¶ 20] to convert the motions to dismiss to motions for summary judgment.

[23] As referenced, the Restraining Order expressly prohibited Plaintiffs from "filing any new civil actions in the United States District Court for the Eastern District of Tennessee without first obtaining written certification from th[e] Court that the complaint has some legal and factual merit." Restraining Order.  The prerequisites to Plaintiffs' filing of any new civil action in the District Court are (1) "Plaintiffs must file a 'Motion Pursuant to Court Order Seeking Leave to File' with any proposed complaint"; (2) "[a]s an exhibit to that motion, [P]laintiffs must attach a declaration or sworn affidavit certifying that: (a) the claim is a new issue which has previously never been raised in any court and is unrelated to the conspiracies they have alleged in prior filings; (b) the claim is not frivolous; and (c) the claim is not made maliciously or in bad faith"; and (3) "[b]y means of a second exhibits, [P]laintiffs must identify and list: (a) the full caption of each and every suit that has been previously filed by them in any court against each and every defendant in the suit that they wish to file, and (b) the full caption of each and every pending suit that has been previously filed

requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and

limits of the judicial power of the United States' and is 'inflexible and without exception.'"

(quoting *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)); *Campanella v. Com.

Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (noting that "it is beyond question that federal

courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to

satisfy themselves that jurisdiction to entertain an action exists").  Subject matter jurisdiction is

an issue "that takes absolute priority over all merits questions in a case." *Lindsey v. Pinnacle

Nat'l Bank (In re Lindsey)*, 726 F.3d 857, 858 (6th Cir. 2013).

    1. *Standing*

    The United States Supreme Court has stated that "standing 'is perhaps the most important

of the jurisdictional doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990)

(citations omitted).  Once a debtor files a bankruptcy petition, "all legal or equitable interests of

the debtor in property as of the commencement of the case" become property of the bankruptcy

estate. 11 U.S.C. § 541(a)(1).  Such property interests clearly include causes of action. *See Bauer

v. Com. Union Bank, Clarksville, Tenn.*, 859 F.2d 438, 440-41 (6th Cir. 1988).  Thus, after a

bankruptcy petition is filed, any cause of action formerly belonging to a debtor prebankruptcy

vests in the bankruptcy trustee for the benefit of the estate. *Id.* at 441.  "[O]nly the [t]rustee may

bring [a prepetition] claim, and [a debtor] 'has no standing to pursue' it alone" unless the trustee

abandons the estate property. *Auday v. Wet Seal Retail, Inc.*, 698 F.2d 902, 904 (6th Cir. 2012)

(quoting *Bauer*, 859 F.2d at 441).

---

by them or on their behalf." *Id.* at 1-2 (emphasis added).  This Court finds that Plaintiffs' initiation of this adversary
proceeding violated the Restraining Order, which alone provides a ground for dismissal of this action without
addressing the sufficiency of the Amended Complaint under Rule 12 because this Court is authorized to preside over
bankruptcy matters by the district court's general order of reference pursuant to 28 U.S.C. § 157(a).  Notwithstanding
that the Court is authorized to dismiss this action based on the Restraining Order, the Court will address the sufficiency
of Plaintiffs' allegations because the Court lacks subject matter jurisdiction over the allegations that were in violation
of the Restraining Order.

Thus, Debtor unquestionably lacks standing to bring prepetition claims at this time.

Nonetheless, because Debtor has indicated her intent to seek abandonment of her prepetition

claims or derivative standing to assert such claims, the Court will address other arguments

concerning such prepetition claims.

2. *The* Rooker-Feldman *Doctrine*

Under Supreme Court precedent, "lower federal courts [i.e., federal courts other than the

Supreme Court] [are barred] from engaging in appellate review of state-court judgments." *Telos*

*Ventures Grp., PLLC v. Short (In re Short)*, Bankr. No. 1929471, Adv. Proc. No. 20-2027, 2020

WL 6877152, at *4 (Bankr. D. Utah Oct. 30, 2020) (citation omitted) (first alteration in original).

As one bankruptcy court recently explained:

> In other words, "[f]ederal district courts do not have jurisdiction to review, reverse,
> or invalidate state court decisions." . . . The Supreme Court explains that the
> *Rooker-Feldman* Doctrine "is confined to cases . . . brought by state-court losers
> complaining of injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and rejection of
> those judgments." "In other words [for *Rooker-Feldman* to apply], an element of
> the claim must be that the State Court wrongfully entered its judgment." Further,
> as noted in *Mayotte v. U.S. Bank National Association*, 880 F.3d 1169, 1175 (10th
> Cir. 2018): "[T]here would be a *Rooker-Feldman* issue if the federal suit alleged
> that a defect in the state proceedings invalidated the state judgment. That was what
> *Rooker* was about — alleged violations of due process, equal protection, and the
> Contract Clause by the state court."

*Id.* (citations omitted); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because they have

alleged that extrinsic fraud operated to void *ab initio* the Judgment. [*See* Doc. 70 at ¶ 12 (citing[24]

Memorandum Decision Denying Motion to Dismiss, *Petrelli v. JP Morgan Chase N.A. (In re*

*Petrelli)*, Adv. Proc. No. 17-09040 (CGM) (Bankr. S.D.N.Y. Apr. 2, 2018), ECF No. 19; *Lake v.*

---

[24] Plaintiffs fail to provide proper citations to authority, but the Court was able to locate the cited cases by searching
various sources.

*Capps (In re Lake)*, 202 B.R. 751 (B.A.P. 9th Cir. 1996); Order,[25] *Davet v. Nationsbank Mortg. Corp.*, No. 07-3561 (6th Cir. Nov. 28, 2007), ECF No. 31 (a copy of the Order of the Sixth Circuit is accessible only on the district court docket, No. 1:06-cv-01875-PAG (N.D. Ohio Nov. 30, 2007), ECF No. 38); *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186 (6th Cir. 1986); *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006)).]

Plaintiffs' arguments are unavailing.  In the Sixth Circuit, the continuing validity of the court's 1985 decision in *In re Sun Valley Foods Co., Inc.* is in question.  In *Iannucci v. State*, No. 16-cv-10255, 2016 WL 4089215, at *4 (E.D. Mich. Aug. 2, 2016), *aff'd*, No. 16-2214, 2017 WL 3951849 (6th Cir. 2017),[26] the court explained:

> In *In re Sun Valley Foods*, the Sixth Circuit said that there is an "exception" to the *Rooker-Feldman* doctrine under which a federal court "may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake." *Id.* at 189. But *In re Sun Valley Foods* does not save [the plaintiff's] claims.
>
> As another district court in this Circuit recently explained, there is reason "to question the continuing validity of *In re Sun Valley Foods*." *Dale v. Selene Fin.*

---

[25] Plaintiffs assert that the Sixth Circuit in *Davet* stated:  "Although this claim tenders for the review of a state court judgment, this court is noticed: the state court judgment is void ab initio as articulated infra." [Doc. 70 at ¶ 12.]  Such text does not appear in the Sixth Circuit's decision, which rejected the appellants' argument that the district court erred in dismissing the case under *Rooker-Feldman*.

[26] The Sixth Circuit in *Iannucci* found that the appellant did not challenge the trial court's determination regarding *Rooker-Feldman* and, thus, did not reach the question of the remaining viability of *In re Sun Valley Foods*. *See Iannucci*, 2017 WL 3951849, at *2.  For a discussion of the circuit courts that have rejected the exception, *see David v. Fein Such Kahn & Shepard PC*, No. 18-8560, 2019 WL 1789471, at *5 (D.N.J. Apr. 24, 2019) ("'Under  the fraud exception, which has been embraced by the Courts of Appeal for the Sixth and Ninth Circuits, *Rooker-Feldman* does not apply when the plaintiff asserts that the "state court judgments were procured by . . . [the defendants] through fraud, misrepresentation, or other improper means," because such claims are "independent" of the claims brought in state court.' *Campbell v. Tabas*, No. 16-6513, 2017 WL 3142118, at *3 (E.D. Pa. July 25, 2017) (quoting *McCormick v. Braverman*, 451 F.3d 382, 392-93 (6th Cir. 2006) and citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004)). Yet, 'the Second, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits have rejected the exception, as have district courts from the Fourth Circuit.' *Id.* (citing appropriate cases from each of these circuits). 'The Court of Appeals for the Third Circuit has not definitively weighed in on this debate, though it has discussed the exception in dicta and in nonprecedential opinions.' *Id.* (explaining that the Third Circuit discussed the exception 'favorably' in *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) and applied it 'inconsistently' in several unpublished opinions thereafter).").

*LP*, No. 3:15CV1762, 2016 WL 1170772, at *5 (N.D. Ohio Mar. 25, 2016) (Carr, J.). "Since recognizing [the fraud] exception [in *In re Sun Valley Foods*] nearly thirty years ago, the Sixth Circuit has, in cases involving the exception, yet to find it applicable." *Id.* at *4 (collecting cases). More importantly, the Sixth Circuit decided *In re Sun Valley Foods* before the Supreme Court clarified the scope and nature of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), and the Sixth Circuit's more recent, post-*Exxon Mobil* decisions applying the doctrine make clear that the sole "inquiry . . . is the source of the injury plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Thus, "[i]f the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of the injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* Whether a state-court judgment was improperly obtained is no longer a factor.

As the court in *Dale* explained, permitting a plaintiff to avoid the *Rooker-Feldman* doctrine by alleging that the judgment under attack was obtained through fraud would – in contravention of the more recent *Rooker-Feldman* precedent described above – allow a plaintiff to pursue a claim in federal court even if the claim sought to redress an injury caused by a state-court judgment:

> After all, the [Sixth Circuit] emphasized in *McCormick*, 451 F.3d at 393, that the dispositive question, for purposes of the *Rooker-Feldman* doctrine, is the source of the plaintiff's injury. If the source is a state-court judgment, then a federal court has no jurisdiction to hear the claim. But if the plaintiff can avoid that result by alleging some fraud, deception, accident, or mistake contributed to a state-court judgment, there is a wide road indeed around the *Rooker-Feldman* doctrine.

*Dale*, 2016 WL 1170772, at *5. This in part explains why several more recent circuit-level decisions decline to follow *In re Sun Valley Foods* and/or to adopt the fraudulent-procurement "exception." *See, e.g., Scott v. Frankel*, 606 F. App'x 529, 532 n.4 (11th Cir. 2015); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426-27 (2d Cir. 2014); *West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 n.3 (10th Cir. 2007).

Simply put, under the most recent on-point holdings of the Supreme Court and Sixth Circuit, a plaintiff may not avoid application of the *Rooker-Feldman* doctrine merely by alleging that the state-court judgment under attack was procured by fraud.

The facts before this Court are akin to those recently before the Ninth Circuit Bankruptcy

Appellate Panel in *Reyes v. Kutnerian (In re Reyes)*, BAP No. EC-18-1229-BSL, 2019 WL

1759749 (B.A.P. Apr. 19, 2019), *aff'd*, 812 F. App'x 464 (9th Cir. July 8, 2020).  The debtors

argued that they were not properly noticed of certain state-court proceedings that resulted in their

eviction and that the defects deprived them of due process.  The debtors lost their arguments in

the state trial and appellate courts.  *Id.* at *2-3.  The debtors unsuccessfully also sued the creditor

in state court on the same claims. *Id.* at *3.  In the bankruptcy case, the debtors moved to vacate

the state-court judgment against them, "arguing that it was 'void' because it was obtained

through [the creditor's] 'extrinsic fraud' on the court." *Id.*  They asserted that the creditor had

defrauded them and the state court by not giving the proper notice and that the state court "either

lacked jurisdiction to enter the judgment, or if it had jurisdiction, the judgment was obtained as a

result of the extrinsically fraudulent nature of the notice." *Id.*  They also argued that the creditor

made false statements regarding service and that such "constituted another 'extrinsic fraud' on

the court and also deprived it of jurisdiction." *Id.*

Like here, the debtors also claimed that they were denied due process by the state court's

failure to follow required procedure:

> They argued that the [state] court violated their due process rights by proceeding to
> trial before hearing their demurrer and by denying them an opportunity to file an
> answer to the . . . complaint.  They maintained that the [state] court was required to
> wait five days to allow them to file an answer after ruling on the demurrer, yet failed
> to do so.  Because they had not yet filed an answer, argued the [debtors], the [state]
> court had no power to act and proceed to trial.

*Id.* at *4.  Finally, as here,[27] the debtors argued that the creditor violated federal criminal statutes,

"which also supported a finding of extrinsic fraud on the court." *Id.*

The *Reyes* debtors also attempted to characterize their claims to avoid application of

*Rooker-Feldman*; they "stated that their purpose in filing the Motion to Vacate was not to regain

---

[27] Debtors argue that Anderson, Blue Tarp, and K&B have engaged in a conspiracy to defraud the United States in
violation of 18 U.S.C. § 371. [Doc. 115 at p. 9.]

possession of the property, but to restore their good name." *Id.*  In response to the creditor's

argument that *Rooker-Feldman* precluded the debtors' claim, they argued that "no court had ever

considered or ruled on" certain portions of their arguments so that "they were not asserting error

by any previous court." *Id.*  Finally, the debtors asserted that *Rooker-Feldman* did not apply

"because they were invoking substantive rights under the [Bankruptcy] Code – the validity of a

creditor's proof of claim and the breadth of a debtor's discharge – which constituted 'core'

matters." *Id.*

Thus, the similarities between *Reyes* and this case are remarkable, and the Court will

follow the *Reyes* analysis (even though application of *Rooker-Feldman* in the Sixth Circuit may

very well be more stringent than in the Ninth Circuit) and find that Plaintiffs' claims in the

Amended Complaint relating to the validity of Anderson's Judgment are barred by the *Rooker-*

*Feldman* doctrine. Even if the extrinsic fraud exception to the *Rooker-Feldman* doctrine applies

in the Sixth Circuit, "[t]he basic requirement for invoking the extrinsic fraud exception is that

there has been no fair adversary trial at law, either because the aggrieved party was kept in

ignorance of the action or proceeding, or in some other way fraudulently prevented from

presenting his claim or defense." *In re Lake*, 202 B.R. at 758[28] (citing *United States v.*

*Throckmorton*, 98 U.S. 61, 65 (1878)); *see Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)

("Extrinsic fraud is conduct which prevents a party from presenting his claim in court.").

Like in *Reyes*, Plaintiffs made their procedural arguments to the state court, even

appealing some of those arguments [Doc. 68-5 at pp. 44-49], attempted unsuccessfully more than

---

[28] *In re Lake* also has been criticized by a bankruptcy court in the Sixth Circuit because it was "decided almost a decade prior to *Exxon Mobil*, creditors obtained a default judgment against the debtors, before they filed bankruptcy, related to a real property investment [and] when [the d]ebtors filed a chapter 7 case, the creditors filed a nondischargeability complaint [so that] the central issue was collateral estoppel, specifically whether the bankruptcy court could vacate a California state default court judgment procured through fraud." *In re Goodman*, No. 14-62333, 2015 WL 3507119, at *4 (Bankr. N.D. Ohio June 1, 2015).

once to raise some of the same arguments to the federal court, and finally abandoned the

Tennessee courts in favor of attempting to raise the same arguments to this Court.  Plaintiffs'

failure to appeal the Judgment does not now allow them to attack it collaterally here.[29]

A detailed review of the Amended Complaint in light of *Rooker-Feldman* results in the

Court's rejection of Plaintiffs' allegations and/or legal conclusions in the following paragraphs:

1, 2, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24,[30] 25, 26, 29, 30, 32, 33, 38, 39, and 42.

3.  *Mootness*

Federal courts lack jurisdiction to hear a claim that has become moot because it no longer

satisfies the case-or-controversy requirement of Article III, Section 2, of the U.S. Constitution.

"'Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases

or controversies.'  'When — for whatever reason — the dispute discontinues or we are no longer

able to grant meaningful relief to the prevailing party, the action is moot, and we must dismiss

for lack of jurisdiction.'" *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir.

2014).

---

[29] This Court's holding is in keeping with Judge Varlan's ruling that *Rooker-Feldman* barred Plaintiffs claims in the 2018 District Court Lawsuit: "Plaintiffs' latest rub is that the state court lacked both personal and subject-matter jurisdiction and therefore violated their constitutional rights. . . . [T]his Court is not the correct forum to challenge the actions of a state counterpart.  Under what is known as the *Rooker-Feldman* doctrine, the lower federal courts are not permitted to entertain cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). . . . If plaintiffs' arguments were correct, their path to relief was to appeal the state-court judgment rather than file a litany of thoughtless lawsuits.  This Court will not correct plaintiffs' litigation errors, because under the *Rooker-Feldman* doctrine it cannot." [Order, 2018 District Court Lawsuit (E.D. Tenn. Aug. 1, 2019), ECF No. 33.]

[30] In Plaintiffs' response to Anderson's motion for a protective order, which motion was granted by this Court at the hearing held on October 1, 2020, Plaintiffs state: "William Kinney is seeking class certification related to the embezzlement of tax payer funds used to pay prospective jurors for a trial that was not ordered to take place," citing to pages 9 and 10 (paragraph 24) of the Amended Complaint. [Doc. 46 at ¶ 15.]  Even if the passing allegation of paragraph 24 of the Amended Complaint could be read creatively to state such a class claim, this Court very clearly would have no subject matter jurisdiction over any such claim.  *See* 28 U.S.C. § 157(b).  Thus, to the extent that Plaintiffs actually intended such a claim (without identifying it as such in the Amended Complaint), it is also dismissed.

Paragraph 3 of Plaintiffs' Amended Complaint asserts that it is "a formal objection to Anderson's claim." [Doc. 9 at ¶ 3; *see also* Doc. 9 at ¶¶ 27-28, 39.]  Because Anderson did not file a claim in this Court and was permitted to withdraw the improper proof of claim filed by Debtor [Bankr. Docs. 158, 160], this cause of action will be dismissed as moot.  Moreover, even if Anderson were to file a proof of claim in the bankruptcy case, based on the Court's ruling that *Rooker-Feldman* bars Plaintiffs from challenging the Judgment as void, Plaintiffs' objection to it for reasons stated in paragraph 3 of the Amended Complaint could not stand.

Paragraph 5 asserts that the proceeding is also intended to determine the dischargeability of a debt under Federal Rule of Bankruptcy Procedure 7001(6).  [Doc. 9 at ¶ 5.]  Even if the Amended Complaint stated some sort of dischargeability issue for which Plaintiffs (or either of them) had standing, any such claim is mooted by the entry of Debtor's discharge on December 16, 2020. [Bankr. Doc. 167.]  The debt underlying the Judgment has been discharged (although the Judgment lien remains unaffected by the discharge). *See In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018) ("If a creditor had a lien to secure payment of a pre-petition debt before the Chapter 7 bankruptcy, that lien survives, or 'rides through' the Chapter 7 bankruptcy and bankruptcy discharge, unless the lien is avoided in the bankruptcy case.").

C.  Merits of the Remaining Allegations Under Rule 12(b)(6)

Construing Plaintiffs' Amended Complaint liberally leaves the following issues for adjudication on the motions to dismiss under Rule 12(b)(6):  (1) lien avoidance under § 522(f) [Doc. 9 at ¶ 4]; (2) "Abuse of Process" under § 105 for sanctions against Defendants [*id.* at ¶ 6]; (3) "Fraud" or "Fraud on the Court" relating to the October 18, 2017 hearing in the 2016 District Court Lawsuit [*id.* at ¶¶ 13, 16, 17]; (4) Anderson's and K&B's violation of the stay [*id.* at ¶¶ 31,

40]; and (5) a request for sanctions against Defendants under Federal Rule of Bankruptcy

Procedure 9011 [*id.* at ¶ 41].

      1.  *"Abuse of Process" and Rule 9011 Sanctions*

      Plaintiffs assert that their complaint is "also an action for Abuse of Process within the

meaning of 11 U.S. Code § 105(a) and Sanctions against the defendants." [*Id.* at ¶ 6.]  They also

"request sanctions pursuant to 9011, as a remedy for dealing with Anderson's baseless proof of

claim, and violation of the Bankruptcy Stay."  [*Id.* at ¶ 41.]

      Because § 105(a) does not create a private cause of action, Plaintiffs' request in

paragraph 6 of the Amended Complaint is denied and dismissed. *See In re Mattox*, No. 07-

51925, 2011 WL 3626762, at *5 (Bankr. E.D. Ky. Aug. 17, 2011) ("The Sixth Circuit has made

it clear that § 105 cannot be used to create a remedy for a violation of a provision of the

Bankruptcy Code where Congress did not explicitly create one." (citing *Pertuso v. Ford Motor*

*Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000) ("[W]e do not read § 105 as conferring on courts

such broad remedial powers. The 'provisions of this title' simply denote a set of remedies fixed

by Congress. A court cannot legislate to add to them.'"))); *see also Joubert v. ABN AMRO Mortg.*

*Grp., Inc. (In re Joubert)*, 411 F.3d 452, 456 (3d Cir. 2005); *Yancey v. Citifinancial, Inc. (In re*

*Yancey)*, 301 B.R. 861, 863 (Bankr. W.D. Tenn. 2003).

      For the same reason, Plaintiffs cannot sustain a claim for sanctions under Federal Rule of

Bankruptcy Procedure 9011, which is not an independent cause of action and can be initiated

properly only by motion after complying with the procedures expressly required by the Rule, and

this claim likewise is dismissed.  *See In re Martin*, 617 B.R. 866, 874 (Bankr. S.D. Miss. 2020)

("[T]here is no independent cause of action under Rule 9011." (quoting *Akers v. Beal Bank (In re*

*Akers)*, Adv. Proc. No. 12-10020, 2012 WL 3133924, at *2 (Bankr. D.C. Aug. 1, 2012))); *see*

*also Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) ("The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court[.]'" (quoting Fed. R. Civ. P. 11(c)(1)(A))).

2.  *Lien Avoidance under § 522(f)*

Because Federal Rule of Bankruptcy Procedure provides that "[a] proceeding under § 522(f) to avoid a lien or other transfer of property exempt under the Code shall be commenced by motion in the manner provided by Rule 9014," Plaintiffs' attempt to request avoidance of the lien under § 522(f) in this adversary proceeding is dismissed.[31]

Moreover, such a proceeding is limited to the provisions of § 522(f), which provides in relevant part: "Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien . . . ." 11 U.S.C. § 522(f).  Debtor claimed no exemption in the Property, which she asserts is owned by her daughter, Sarah Valdes. Further, the Court entered Judgment in the related adversary proceeding brought by the Chapter 7 Trustee against Ms. Valdes, *Milligan v. Valdes*, Adv. No. 3:20-AP-03032-SHB (Bankr. E.D. Tenn. Oct. 22, 2020), ECF No. 30 (as amended by ECF No. 54), which avoided under 11 U.S.C. § 544 Debtor's prepetition but unrecorded transfer of her partial interest in the Property to Ms. Valdes.

---

[31] Plaintiff William Kinney, in any event, has no standing to seek to avoid the lien under § 522(f) because he is not a debtor in the Chapter 7 proceeding. *See* 11 U.S.C. § 522(f) (allowing only "the debtor [to] avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of [§ 522]"); *see also In re Boddy*, 593 B.R. 643 (Bankr. D. Colo. 2018).

3. *"Fraud" and "Fraud on the Court" Relating to the October 18, 2017 Hearing in the 2016 District Court Lawsuit*

Plaintiffs complain that K&B committed fraud on the district court "by lying to [Magistrate] Judge Guyton about the availability of evidence that does not exist" at an October 18, 2017 hearing in the 2016 District Court Lawsuit. [Doc. 9 at ¶ 13.] They also assert that K&B "defied the district court's order" to produce a copy of the Anderson "credit application fully executed by [Plaintiffs] and any account documentation that would prove the existence of an account." [*Id.* at ¶ 16.] Although these allegations concern the 2016 District Court Lawsuit, they are asserted in the Amended Complaint as grounds for voiding the Judgment. [*Id.* at ¶ 17.] Thus, because this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to invalidate the Judgment, Plaintiffs' allegations concerning the representations and conduct in the 2016 District Court Lawsuit fail to state a claim on which relief may be granted.

Moreover, Plaintiffs raised the issue about the "Anderson Lumber Credit Application" in their motion to reconsider Magistrate Judge Guyton's order, which was filed four days before District Judge Varlan denied Plaintiffs' motion for leave to amend the complaint and granted the motions for judgment on the pleadings. [2016 District Court Lawsuit, ECF Nos. 65, 66, 67.] Plaintiffs appealed the dismissal without asking the district court to address the alleged "discovery fraud." [Doc. 95 at ¶ 18.]

Concerning that appeal, Plaintiffs state:

In our appeal filed with the Sixth Circuit for [the 2016 District Court Lawsuit], we raised the issue regarding the judicial admissions, as well as Fraud Upon the Court, and the improvident dismissal of [the] case . . . . The Sixth Circuit did not address these issues in their order affirming the dismissal . . . , and further stated that because we did not raise the issues of discovery fraud and Fraud Upon the Court, they would not consider the issue on appeal. However, we did raise the issue of Fraud Upon the Court in [the 2016 District Court Lawsuit]. . . . [The 6th Circuit did not apply [a Supreme Court] ruling to its decision.

Furthermore, the Sixth Circuit prejudicated [Plaintiffs] by denying us due process of law under the Fifth Amendment, and violated our statutory rights in failing to exercise its supervisory power to act pursuant to Title 28 U.S.C. §636(b)&(c), governing the Management of Litigation pursuant to the Federal Magistrate Act, when it let stand the dismissal of [the 2016 District Court Lawsuit], without addressing our Motion to Reconsider . . . . This left questions of law and fact neither litigated nor determined, while at the same time compelling us to remain under the unlawful jurisdiction of the state court. In the [2018 District Court Lawsuit], which we have not yet appealed for private reasons, we raised the issue of Anderson/K&B's judicial admissions at the Oct. 18th hearing, and asked the court to determine whether or not the state court had jurisdiction over [Plaintiffs]. . . . The district court responded by dismissing the case without a hearing. . . . In actuality, under the rule of law, the orders dismissing [the 2016 District Court Lawsuit and the 2018 District Court Lawsuit] are void for violation of our Fifth Amendment rights, and so is the corresponding unlawful injunction against [Plaintiffs].

[Doc. 95 at ¶¶ 18-19.]

The Sixth Circuit Court of Appeals recognized that Plaintiffs' claims before the district court included the following, in addition to claims asserted under the FDCPA:

Additionally, the Kinneys alleged that some of the defendants "re-opened Margaret's account without her permission, and applied five invoices that were forgeries (totaling $16,498.72)" in violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* They further alleged that some of the defendants violated Margaret Kinney's privacy rights as codified in 15 U.S.C. § 6821 (Privacy Protection for Customer Information of Financial Institutions) by obtaining the credit application that she allegedly executed. Finally, the Kinneys alleged several instances where they were denied their constitutional rights during the course of the state lawsuit, in violation of 42 U.S.C. §§ 1983 and 1985.

*Kinney v. Anderson Lumber Co., Inc.*, No. 18-5146, Slip Op. at 2 (6th Cir. Sept. 13, 2018), ECF No. 24-1. The court of appeals also expressly acknowledged that Plaintiffs claimed in their appeal that "the defendants had committed discovery fraud and fraud upon the court" and that "the district court erred by not enjoining Anderson['s] civil lawsuit in Tennessee state court," which argument the appellate court called "meritless." *Id.* at 3. The Sixth Circuit refused to consider Plaintiffs' argument that "the district court erred by dismissing their claims where it 'knew, or should have known, based on documentary and testimonial evidence,' that the

defendants had committed discovery fraud and fraud upon the court" because Plaintiffs forfeited the argument by failing to raise to the district court. *Id.* at 8.

Clearly, this Court is not authorized to sit as a reviewer of the decisions of either the district court or the Sixth Circuit Court of Appeals.  Plaintiffs' remedy, if any existed, was before the district court or on appeal to the Sixth Circuit or, ultimately, the United States Supreme Court.

4. *Anderson's and K&B's Violation of the Automatic Stay*

Finally, Plaintiffs allege that Anderson and K&B violated the automatic stay, which Anderson admits.  [Doc. 9 at ¶ 31, 40; Bankr. Doc. 60.]  Although Anderson acknowledges that the filing and service on Debtor of an amended complaint in the Foreclosure Action violated the automatic stay of 11 U.S.C. § 362, it asserts that its counsel, K&B, did so by mistake and inadvertence.  [Bankr. Doc. 60.]

An individual seeking damages for a stay violation must prove by a preponderance of the evidence that (1) the actions taken violated the automatic stay, (2) the violation was willful, and (3) the violation caused actual damages. *See In re Barksdale*, No. 18-15131, 2019 WL 6002188, at *2 (Bankr. N.D. Ohio Nov. 13, 2019).  Concerning willfulness, as this Court explained many years ago:

> A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.

> Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001) (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)).  Notably, "[g]ood faith is not a defense and is irrelevant to liability." *Id.* (quoting *In re Daniels*, 206 B.R. at 446).

The remedy for violation of the automatic stay is found at 11 U.S.C. § 362(k), which provides:  "(1) Except as provided in paragraph (2) [which is not at issue here], an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  The party seeking relief from a stay violation must prove that the violation caused actual damages, which must be proven with reasonable certainty and cannot be based on conjecture. *Archer v. Macomb Cnty. Bank (In re Archer)*, 853 F.2d 497, 499-500 (6th Cir. 1988).

Although good faith is not a defense, such is relevant to the question of whether punitive damages may be awarded.  "Punitive damages are appropriate to deter a pattern of behavior that ignores the automatic stay." *In re Taylor*, No. 07-31579, 2009 WL 981916, at *5 (Bankr. E.D. Tenn. Apr. 9, 2009) (citation omitted). In deciding whether punitive damages are appropriate, "the court should consider (1) the nature of the creditor's conduct; (2) whether the creditor has the ability to pay damages; (3) the creditor's motives in violating the stay; and (4) whether there was any provocation by the debtor.  Generally, an award of punitive damages requires a showing of egregious and intentional misconduct." *Id.* (citation omitted).

First, the Court agrees with Anderson and K&B that only Debtor may raise the stay violation. [*See* Docs. 30 at p. 20; 50 at p. 34.]  Anderson and K&B argue that Plaintiffs' claim for the stay violation should be dismissed because she has failed to allege any actual damages. [*Id.*] In response, Plaintiffs argue:

> [W]e link Anderson's [stay violation by postpetition amendment in the Foreclosure Proceeding] to the fraudulent claim filed by Anderson in November of 2012, as

another deliberate and intentional measure taken to harass, intimidate, and coerce [Plaintiffs] into paying a debt they do not owe. We have contemporaneously logged over 10,000 of personal time spent in response to Anderson's frivolous claim. Those hours represent "life minutes" that are lost forever, in violation of our right to privacy, and our right to be free from government intrusion. For this reason and others, we asked for sanctions against the defendants, and for an order for actual damages including emotional distress damages, and for punitive damages as stated in our Adversary Complaint.

[Doc. 95 at ¶ 37.]

The Court finds that Plaintiffs' allegations of actual damages concerning the stay violation are so intertwined with their other non-cognizable claims that Debtor has failed to state sufficient allegations of actual damage sufficient to sustain a claim for a stay violation. Nonetheless, the claim for violation of the stay will be dismissed *without prejudice* to Debtor's bringing a contested matter by motion in the bankruptcy case, which is the most appropriate procedure for raising a stay violation under § 362(k).[32]

## V. CONCLUSION

Because the Court finds that Plaintiffs' Amended Complaint fails to state a claim over which the Court has subject matter jurisdiction or otherwise for which relief may be granted, Defendants' motions to dismiss will be granted.

An order consistent with this Memorandum shall be entered.

FILED: January 13, 2021

---

[32] Although no rule prohibits Debtor from seeking damages for a stay violation under § 362(k) by an adversary proceeding, the more appropriate procedure is a motion filed in the bankruptcy case. *See* Fed. R. Bankr. P. 9020 (providing that Federal Rule of Bankruptcy Procedure 9014 "governs a motion for an order of contempt made by . . . a party in interest"); *see also Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 498 (B.A.P. 6th Cir. 2008) (stating that actions brought to recover damages for stay violations are brought by motion under § 362(k)). Given the Court's dismissal of all other claims in Plaintiffs' Amended Complaint, the Court will also dismiss the claim under § 362(k) but will give the pro se Debtor an opportunity to pursue the stay violation if she can prove actual damages from that stay violation with reasonable certainty, based on more than conjecture or speculation. *See In re Archer*, 853 F.2d at 499-500.

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE